Filed 9/3/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMERICAN BUILDING INNOVATION LP,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BALFOUR BEATTY CONSTRUCTION, LLC, et al.,<br><br>    Defendants and Respondents. | G062471, G062965<br><br>(Super. Ct. No. 30-2019-01072989)<br><br>O P I N I O N |

Appeals from a judgment and postjudgment order of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Roxborough, Pomerance, Nye & Adreani, Drew E. Pomerance, Joseph C. Gjonola, and David R. Ginsburg for Plaintiff and Appellant.

Finch, Thornton & Baird, Jason R. Thornton, Daniel P. Scholz, and Scott M. Bennett for Defendants and Respondents.

\*          \*          \*

As a condition precedent to the issuance, continued maintenance, or reinstatement of a contractor's license, California law requires applicants and licensees to have on file "at all times" a current and valid certificate of workers' compensation insurance. If the applicant or licensee has no employees or is not otherwise subject to workers' compensation laws, this requirement is inapplicable. (Bus. & Prof. Code,[1] § 7125, subd. (a) & (b).)

Failure to obtain or maintain the required coverage results in the automatic and immediate suspension of the contractor's license by operation of law. (§ 7125.2, subd. (a).) Such a suspension impacts the contractor's ability to litigate claims for compensation: a party who was not "duly licensed . . . at all times during the performance of" its contracting work generally cannot bring or maintain an action to collect compensation for that work. (§ 7031, subd. (a); cf. *id.*, subd. (e) [substantial compliance exception].)

A suspended contractor's license can be retroactively reinstated if the licensee obtains and submits to the registrar a valid certificate of workers' compensation insurance within 90 days of the certificate's effective date. (See §§ 7125.2, subd. (c), 7125.1, subd. (a).) If the certificate is submitted to the registrar more than 90 days after its effective date, however, retroactive reinstatement is available only if the licensee shows "that the failure to have a certificate on file was due to circumstances beyond the control of the licensee." (*Id.*, subd. (b).)

This appeal involves the interplay of these statutes and what circumstances are "beyond the control of the licensee" for purposes of retroactive license reinstatement. In this case, plaintiff American Building Innovation LP (ABI) had a workers' compensation policy when it started

---

[1]  All further undesignated statutory references are to this code.

2

work on a project. Its insurer canceled the policy, however, because ABI refused to pay outstanding insurance premiums charged on a prior policy, since ABI believed (correctly as it turns out) it was being overcharged. As a result of the policy cancellation, ABI's contractor's license was suspended mid-project. Fully aware it was unlicensed and uninsured, ABI nevertheless continued its work.

ABI later sued to recover amounts allegedly owed for its work on the project. Several years into that litigation, ABI settled its old premium dispute with its workers' compensation insurer and had the canceled policy retroactively reinstated as part of the settlement. ABI then applied to the Contractors' State License Board (the Board) for retroactive reinstatement of its contractor's license, asserting that ABI's failure to file a certificate of workers' compensation coverage had been "due to circumstances beyond [its] control," in that the policy had been canceled "unbeknownst to" ABI. The Board accepted ABI's representation and retroactively reinstated its contractor's license under section 7125.1.

We must now decide whether ABI was "duly licensed . . . at all times during the performance of" its work; if not, section 7031 bars ABI from bringing or maintaining the present action. We conclude section 7031 does indeed bar ABI's current claims. A suspended contractor's license can be retroactively reinstated under section 7125.1 only if "the failure to have a certificate on file was due to circumstances beyond the control of the licensee." (*Id.*, subd. (b).) In this case, the lapse in coverage was not beyond ABI's control. The record before us demonstrates the policy cancellation occurred because ABI chose not to pay billed insurance premiums. ABI learned of the policy cancellation days after it took effect, yet ABI did not procure replacement coverage until years later when it settled the premium

3

dispute with its insurer. The insurer's retroactive reinstatement of the policy following that settlement was essentially meaningless because it occurred long after the statute of limitations ran on any workers' compensation claims, rendering the coverage illusory.

We agree with the trial court that section 7031 bars the present action, and we therefore affirm the judgment. We also affirm the award of attorney fees under the subcontract's prevailing party attorney fee provision.

STATEMENT OF FACTS

Defendant Balfour Beatty Construction, LLC (Balfour Beatty) was hired by a local school district to construct a two-story classroom building at an elementary school. In June 2017, Balfour Beatty hired ABI as a subcontractor to perform concrete, framing, and structural steel work on the project and agreed to pay ABI over $700,000 for its work.

ABI was on the project from August 2017 through May 2018. ABI concedes that its work on the project required it to be licensed by the Board and that it had to maintain workers' compensation insurance throughout the project in order to maintain its license. (See §§ 7026, 7028, 7125, 7125.2.)

When ABI began its work on the project in August 2017, it had a workers' compensation insurance policy issued through State Compensation Insurance Fund (State Fund). In December 2017, State Fund sent ABI a notice of cancellation, informing ABI that its 2017-2018 workers' compensation policy would be canceled in January 2018 if ABI did not pay approximately $33,000 in outstanding premiums, which State Fund asserted were owed for ABI's 2015-2016 policy based on an audit State Fund had performed in 2017.[2]

_____

[2] State Fund first audited ABI's 2015-2016 policy in spring 2017

4

ABI received Stand Fund's notice of cancellation; it nonetheless failed to make payment. Accordingly, State Fund canceled ABI's 2017-2018 policy on January 25, 2018. Both the Board and ABI's insurance broker notified ABI of the cancellation in writing shortly thereafter.

ABI's principal, Tin Vo, admittedly became aware of the policy cancellation no later than February 1, 2018. According to Vo, he was "blindsided" by the cancellation because State Fund had previously suspended collection of policy premiums during the audit dispute and had not previously canceled ABI's policies.

As a result of the policy cancellation, ABI's contractor's license was suspended by operation of law on January 25, 2018, due to ABI's "failure . . . to . . . maintain workers' compensation insurance coverage." (§ 7125.2.) The Board gave ABI notice of the license suspension on January 29 and informed ABI that its contractor's license would be suspended if ABI failed to submit a valid insurance certificate or exemption certificate within 45 days. (See § 7125.2, subd. (b) [requiring registrar to give notice of license suspension].) ABI did neither. In mid-March, the Board sent ABI a letter notifying ABI that its license had been retroactively suspended effective January 25 under section 7125.2.

---

and told ABI it owed about $48,000 in premiums. ABI disputed the audit and the resulting bill, and State Fund put a hold on the bill to further investigate the matter. In late 2017, State Fund issued ABI a revised audit statement for roughly $15,000 less than had been previously billed. Still not satisfied, ABI continued to dispute the revised audit bill. State Fund acknowledged the premium dispute in January 2018 and informed ABI it would review the matter, but advised ABI it would nevertheless cancel the 2017-2018 policy effective January 25, 2018 if ABI did not pay the disputed bill before the cancellation date.

The record establishes that Vo, ABI's principal, knew that ABI's policy had been canceled, that its license had been suspended, and that ABI was therefore not to engage in construction activities. ABI nonetheless continued work on the project, logging over one thousand hours on the project without workers' compensation coverage or a contractor's license in place. According to Vo, ABI was between a rock and a hard place—either finish work and get paid, or quit and get nothing—so it had "no choice" but to continue the work.[3]

In an effort to get ABI's contractor's license reinstated, Vo filed an "Exemption from Workers Compensation" form with the Board in early April 2018, declaring under penalty of perjury that ABI does not need workers' compensation insurance because it does "not employ anyone." This was false. As Vo later admitted at trial, ABI had at least nine employees working on the project at the time. Vo nonetheless decided to falsely claim the exemption because ABI was heavily invested in the project and he did not want to lose money. Upon receipt of the exemption form, the Board reinstated ABI's license effective April 5, 2018.

Meanwhile, ABI continued to dispute State Fund's revised audit on the 2015-2016 policy, so State Fund assigned the collection of the outstanding premiums to a collection service, which filed a complaint against ABI and Vo in late 2018. In early 2019, State Fund issued its final audit statement on the 2015-2016 policy, asserting ABI owed about $23,000

---

[3] Although Vo claimed ABI lacked the resources to pay State Fund, ABI's financial records indicate it had a net worth at the time of nearly $18 million, including roughly $500,000 in cash.

6

(roughly $10,000 less than previously claimed). ABI failed to pay that premium.

As for the construction project, Balfour Beatty refused to pay ABI for its work. Accordingly, in May 2019, ABI sued Balfour Beatty and several construction bonding surety companies (collectively, Defendants) for fraud, breach of contract, quantum meruit, recovery against bonds, and statutory penalties.

Balfour Beatty cross-complained against ABI and Vo for fraud, express indemnity, and equitable indemnity. Balfour Beatty also asserted as its 31st affirmative defense that ABI "was not properly licensed at all times as required by Business and Professions Code section 7031," and as a result "is barred from recovering payment for any labor, materials or equipment furnished to the project."

Defendants filed a motion for summary judgment based on the 31st affirmative defense. In November 2020, just days before the hearing on that motion, and nearly three years after State Fund had canceled ABI's workers' compensation coverage, ABI settled its premium dispute with State Fund. As part of the settlement, ABI paid State Fund premiums in excess of $93,000 on the 2015-2016 and 2016-2017 policies; State Fund then withdrew its policy cancellation and reinstated the 2017-2018 policy.

Shortly thereafter, State Fund filed two certificates of workers' compensation insurance with the Board, verifying ABI had insurance in place for the 2017-2018 and 2018-2019 policy years. ABI then applied to the Board for reinstatement of its license under section 7125.1, which permits the retroactive reinstatement of a suspended license if the licensee submits a valid certificate of workers' compensation insurance and shows "that the

7

failure to have a certificate on file was due to circumstances beyond the control of the licensee." (See §§ 7125.2, subd. (c), 7125.1, subd. (b).)

As part of that application, Vo filed a form which stated under penalty of perjury that ABI's lack of workers' compensation insurance "was beyond my control because unbeknownst to me and [ABI], [State Fund] improperly submitted a cancellation notice to the [Board] for ABI's February 21, 2017 to February 21, 2018 policy." The Board apparently accepted ABI's representations, as it reinstated ABI's license retroactively; the Board also revised ABI's license history to remove the January 2018 suspension under section 7125.2.

In November 2022, the trial court held a bench trial on the bifurcated issue of Defendants' 31st affirmative defense—ABI's failure to be duly licensed. During trial, State Fund's underwriting manager admitted that State Fund had overcharged ABI for premiums, that State Fund generally does not cancel a policy for nonpayment of a bill until the dispute over the bill is resolved, that State Fund should not have canceled ABI's 2017-2018 policy, and that ABI's license suspension occurred because of the way State Fund handled the dispute.

After hearing testimony, admitting exhibits, and taking the matter under submission, the trial court issued a statement of decision finding in favor of Defendants on the 31st affirmative defense, concluding ABI was "not 'a duly licensed contractor at all times during the performance' of the contract" and therefore "may not 'bring or maintain' this action 'or recover' compensation for its work." The court then entered judgment in favor of Defendants and against ABI. ABI filed a notice of appeal from the judgment.

8

Defendants filed a motion for attorney fees under Civil Code section 1717 and the subcontract's prevailing party fee provision.[4] The parties also filed motions to tax costs. After granting the motions in part, the trial court entered an amended judgment in favor of Defendants and against ABI, which included an award of over $270,000 in costs and over $1.55 million in attorney fees to Defendants. ABI filed a second notice of appeal from the attorney fee award. We consolidated the two appeals at ABI's request.

DISCUSSION

I.

THE APPLICABILITY OF SECTION 7031

We first consider the trial court's finding that section 7031 bars ABI from maintaining this action because it was not "'a duly licensed contractor at all times during the performance'" of its contract from July 2017 through May 2018.

The parties dispute the applicable standard of review. ABI maintains this is a matter of statutory interpretation which requires de novo review, while Balfour Beatty asserts the issue of whether ABI was a "duly licensed contractor at all times" is a factual question subject to substantial evidence review. Though we tend to agree with Defendants, we need not resolve the question of which standard of review applies, because under either standard, our conclusion would be the same.

The facts before us are straightforward. To summarize, on January 25, 2018, midway through its work on the project, ABI's workers'

---

[4] Under Civil Code section 1717, in an action on a contract that provides for attorney fees and costs to the prevailing party, the prevailing party (as determined by the court) is entitled to reasonable attorney fees as an element of costs.

compensation policy was canceled because of its refusal to pay outstanding insurance premiums allegedly owed for a previous policy, and ABI's contractor's license was automatically suspended by operation of law that same day. (§ 7125.2.) ABI's principal became aware of the policy cancellation no later than February 1, 2018, but he did not take any steps at the time to have the policy reinstated or to procure coverage elsewhere. Instead, ABI continued its work knowing it was uninsured and unlicensed. In April 2018, in an effort to get its license reinstated, ABI falsely represented to the Board, under penalty of perjury, that it was exempt from workers' compensation insurance requirements because it had no employees.

More than two years later, midway through the pending litigation with Defendants, ABI paid over $93,000 to settle its premium dispute with State Fund, which then retroactively reinstated its 2017-2018 policy. ABI then applied to have its contractor's license retroactively reinstated; in doing so ABI represented to the Board that the lapse in workers' compensation coverage had been "due to circumstances beyond [its] control," in that the policy had been canceled, "unbeknownst to" ABI. The Board retroactively reinstated ABI's license.

We must decide whether, given these facts, ABI was "duly licensed . . . at all times during the performance of" its work. If it was not, section 7031 bars ABI from bringing or maintaining the present action to collect compensation for its work.

To establish it was duly licensed at all times, ABI relies on the Board's contractor's license history for ABI. Thanks to the various retroactive reinstatements described above, this document currently reflects that ABI was licensed continuously throughout the project.

10

That certificate of licensure, however, creates only a rebuttable presumption of licensure. (*Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 391–392.) A party may attack that presumption "by going behind the face of the license" and proving it is in fact a "'sham,'" and courts have found a license invalid notwithstanding the certification. (*Id.* at p. 385; see *Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 851 [contractor's production of certificate of licensure is insufficient if opposing party disputes whether contractor was properly licensed]; see, e.g., *Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1119, 1121 [contractor's lawsuit was barred, notwithstanding facially valid license, where license was automatically suspended by operation of law because the contractor avoided obtaining workers' compensation insurance by falsely claiming to have no employees].)

In this case, we find ABI was not entitled to retroactive reinstatement of its license under section 7125.2. Because ABI applied for retroactive reinstatement of its license more than 90 days (in this case, nearly three years) after the effective date of the certificate of insurance, the Board could only reinstate the suspended license if "the failure to have a certificate on file was due to circumstances beyond the control of [ABI]." (§§ 7125.2, subd. (c), 7125.1, subd. (b).) Here, neither the policy cancellation nor the continued failure to have insurance on file were outside ABI's control.

In ABI's request for reinstatement, Vo represented to the Board, under penalty of perjury, that ABI's lack of workers' compensation insurance "was beyond my control because unbeknownst to me and [ABI], [State Fund] improperly submitted a cancellation notice to the [Board] for ABI's February 21, 2017 to February 21, 2018 policy." That representation was false. State Fund canceled the 2017-2018 policy effective January 25, 2018,

11

because ABI made a considered decision not to pay the premiums due on the previous policy.

The cancellation was not "unbeknownst to" ABI. Even if the cancellation came as a surprise (Vo testified he did not think State Fund would actually cancel the policy despite its threat to do so given the pending audit dispute), ABI became aware of the policy's cancellation no later than February 1, 2018. Yet ABI made no effort to have the policy reinstated or to obtain insurance elsewhere, despite having the wherewithal to do so.

Once the policy was canceled, ABI had a duty to "obtain" coverage elsewhere if it intended to continue to work on Balfour Beatty's project. (See § 7125.2, subd. (a).) It failed to do so. Instead, it falsely represented to the Board, under penalty of perjury, that ABI was exempt from workers' compensation insurance requirements because it had no employees. When it elected not to pay the premium due or procure workers' compensation insurance elsewhere, ABI compromised the safety and security of its workers. It was not until over two years later, when faced with Defendants' motion for summary judgment, that ABI agreed to pay the 2015-2016 policy premium so that its 2017-2018 policy would be retroactively reinstated.

ABI has not shown its lapse in workers' compensation coverage "was due to circumstances *beyond [its] control*." (§ 7125.1, subd. (b), italics added.) The Board, therefore, lacked the power to reinstate ABI's suspended license retroactively. (§ 7125.2, subd. (c).) That in turn means ABI was not "*duly* licensed . . . at all times during the performance of" its work. (§ 7031, subd. (a), italics added.) Accordingly, section 7031 bars ABI from bringing or maintaining the present action against Balfour Beatty to collect

12

compensation for its work on the project, "regardless of the merits of [ABI's] cause of action" against Balfour Beatty. (*Ibid.*)

The fact that State Fund retroactively reinstated the 2017-2018 policy in November 2020 as part of its settlement with ABI does not compel a different result. As the trial court aptly noted, "An ABI employee injured on January 26[, 2018] would have had no coverage. By the time ABI got retroactive coverage years later, both ABI and State Fund knew there had been no claims against ABI. Insurance that covers a period known to be claim-free is no insurance at all; it is window dressing. It encourages contractors to gamble on letting their workers' compensation insurance lapse and papering over the coverage gap later with retroactive 'insurance' that covers nothing."

ABI focuses much of its argument on the fact that State Fund eventually admitted it had overcharged ABI and should not have canceled the policy. According to ABI, State Fund's improper policy cancellation was "void" and "defective," and ABI never would have had its license suspended if State Fund had acted properly.

This argument falls flat factually. First, State Fund's late 2017 demands for payment were apparently not unfounded, as ABI paid State Fund over $93,000 in premiums as part of the November 2020 settlement. Second, the fact that State Fund overstated the amount of premiums due in late 2017 does not exonerate ABI from failing to obtain insurance elsewhere after its policy was canceled. Rather than doing so, ABI elected to continue its work on the project, knowing it was uninsured and unlicensed.

ABI alternatively argues it cannot be subject to section 7031's bar on recovery because ABI substantially complied with the licensing requirements. We are not persuaded. A court may only find substantial

13

compliance with the licensure requirements if the contractor "(1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure." (§ 7031, subd. (e).) We decline to find ABI acted in good faith, given its repeated false declarations to the Board. It also failed to act promptly, given that it waited nearly three years to settle its policy premium dispute with State Fund.

Citing the Eighth Amendment to the United States Constitution, ABI maintains the application of section 7031 is unconstitutional in that it arbitrarily and excessively punishes ABI by precluding any recovery for its work. Again, we are not persuaded.

The legitimacy of the public policies underlying California's licensing laws and the validity of section 7031 are well established. As our Supreme Court has observed, California's licensing laws are intended "to protect the public from incompetence and dishonesty in those who provide building and construction services," and the "licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 (*Hydrotech*).) "Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay." (*Ibid.*)

"Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed

14

contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties.*'" (*Hydrotech, supra,* 52 Cal.3d at p. 995.) The result is "a stiff all-or-nothing penalty for unlicensed work." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 426.) The statute itself specifies that it applies "regardless of the merits of the cause of action brought by" the plaintiff (§ 7031, subd. (a)), and its "harsh results are justified by the importance of deterring violations of the licensing requirements" (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 518, 519).

We agree with the trial court that section 7031 bars ABI from maintaining this action because it was not a "duly licensed contractor at all times during the performance of" its contract. (*Id.*, subd. (a).) We therefore affirm the judgment.

## II.

### ATTORNEY FEES

We next consider the award of over $1.55 million in attorney fees to Defendants under Civil Code section 1717 and the subcontract's prevailing party attorney fee provision. Although normally we review attorney fee awards for abuse of discretion, where, as here, the appeal presents a legal question of whether the criteria for an attorney fee award have been satisfied, our review is de novo. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

15

ABI contends Balfour Beatty is not entitled to attorney fees because it did not prevail on the contract; rather, it only succeeded in asserting a statutory affirmative defense.[5] We disagree.

When a litigant prevails in an action on a contract by establishing that the contract is invalid or unenforceable for reasons other than illegality, Civil Code section 1717 permits that party's recovery of attorney fees if the opposing party would have been entitled to attorney fees under the contract had it prevailed. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611; *California-American Water Co. v. Marina Coast Water Dist*. (2017) 18 Cal.App.5th 571, 579.) That is essentially what occurred here. Defendants established the subcontract was unenforceable by ABI under Business and Professions Code section 7031, so Civil Code section 1717 permits Defendants, as the prevailing parties in ABI's contract action, to recover attorney fees under the subcontract's attorney fee provision. (See *Pacific Custom Pools, Inc. v. Turner Construction C*o. (2000) 79 Cal.App.4th 1254, 1258–1259, 1268 [contractor who defeated cross-complaint by unlicensed subcontractor under § 7031 was entitled to prevailing party attorney fees under § 1717].)

ABI cites *Mountain Air, supra,* 3 Cal.5th 744, to support its argument that a contract provision awarding fees to a prevailing party is not available if an affirmative defense voids the contract claim. ABI misapprehends the case's holding. In *Mountain Air*, the sellers in a real estate transaction sued the buyers for failing to purchase the subject property, and the buyers successfully asserted novation as an affirmative

---

[5] ABI does not assert the amount of fees is unreasonable or improper.

16

defense, establishing the purchase agreement had been superseded by the parties' option agreement. (*Id.* at p. 747.) The Supreme Court determined the buyers could not recover attorney fees under the option agreement's attorney fee provision, which allowed the prevailing party to recover attorney fees in "'*any legal action or any other proceeding* . . . brought for the enforcement of this Agreement'" (*id.* at p. 752), because no party brought a legal action to enforce the option agreement. The buyers instead asserted the option agreement as an affirmative defense to claims under a different agreement. (*Id.* at pp. 752–755.)

Here, by contrast, ABI filed suit to enforce the subcontract, thereby triggering the subcontract's attorney fee provision. As the prevailing party in that action, Defendants are entitled to attorney fees; the fee award must therefore be affirmed.

## DISPOSITION

The judgment and postjudgment order are affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

GOETHALS, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

17